Good afternoon. My name is Jonathan Landers. I'm from Houston, Texas, and I represent Mr. Tong, the appellant petitioner in this matter. May it please the court, my colleague. There's three issues remaining in this appeal. We have the due process issue related to the Vordire arbitrary change in law issue. We've got the ineffective assistance of appellate counsel related to that issue, and we've got the Wiggins or Martinez-Trevino-Shinn-Martinez issue, which seems to be changing almost weekly, quite frankly. With the court's permission, I'd like to start with the due process issue. I know it's been a while since it's been addressed, but I do think it's very important. First, I'd like to point out what this claim is not. This is not an attempt to constitutionalize peremptory challenges. This is not a substantive due process claim. It's a freestanding procedural due process claim, and it's a question of whether or not a court, during Vordire and a capital proceeding, is permitted to change the law prior to the beginning of Vordire and then arbitrarily change the law in the well over a hundred years. The rule has been due process requires adherence to the standing law, and I'd point out two cases. Well, of course, the initial change here was favorable to Mr. Tong, right? In other words, if no change had ever been made, it would have been the usual, and there wouldn't have been any basis on which to complain. So, if anything, he benefited. I understand that you're emphasizing it's fair that you do so, that there was maybe an unexpected change, but overall, he came out ahead in terms of the number of challenges that he was permitted. He certainly came out ahead by the number he was permitted by statute, which would have been 15. But as I'll discuss, in these Vordire cases that involve due process violations or equal protection violations, the reason they don't conduct harm analysis is we don't know what would have happened here. And so, the court's aware and I'm aware of the way the process should have worked is you get your 15 challenges. Afterwards, if you think that you've been erroneously denied a challenge for cause, you request another strike, explain why you need it, and they would give you one. We've all read these capital Vordire proceedings before. Oftentimes, you will get additional preemptory strikes at the end. The issue is we'll never know how this case would have turned out had this been conducted in the regular fashion. And if you look at the record here, it's clear while this alleged benefit was given to Mr. Tong. The trial judge himself tells us once the state starts to Mr. McClellan. He tells him, Mr. McClellan, you can go talk to your appellate division over there. The last thing you want on appeal is a big fat record where I'm denying strikes for cause. This wasn't done favorably to Mr. Tong. It was done to insulate this case from a perceived appeal. This trial judge seemed to think there was going to be a death sentence handed down in this case. And it would have gone on and had it not changed in the middle here, then, Judge, maybe you're right. Maybe that's the issue. But what ends up happening is the state, they don't object at first. They just say stuff like, Judge, that's 17 for the record. That's 18 for the record. Get to 22, 23, they start to object. And from the record, it's clear to me, I think it probably is to you, the trial court gets upset. Tells him, you know, you really want to change back? You really want to change back? He doesn't change it yet. He waits for that last juror. In the middle of that voir dire, he removes her without an objection. And he says, okay, you want to go the old-fashioned way? We're changing it back. That was an arbitrary decision to do at that point. And as the defense said, and I think it's as clear from the record, the defense had been relying on this, quite frankly, illegal procedure from the start, only to have it changed on. So the problem is we'll never know what would have happened here. And I would point the court to Hurtado v. California and Walker v. Sauvignette. These are over 100 years old Supreme Court cases on different issues. But they do discuss due process from the time of the Magna Carta to Lord Coke and his ideas on due process. And one thing that's clear is that due process requires adherence to the law of the jurisdiction, which we didn't have in this case. A test this court could apply here comes from Hicks v. Oklahoma. The question for due process, and that's a case where the law was not followed also. The law was that this was a sentencing issue. The defendant should have been sentenced between 10 years to life, but was improperly instructed that the jury was instructed you have to come back with a 40-year sentence. The test given by the Supreme Court in that case where the law was not followed by the jury, due process preserves against arbitrary deprivations of statutory protections. We've got that here. If the petitioner has a substantial and legitimate expectation that the statutory protections will be followed. Going into this trial, Mr. Tong and his attorneys had the right to believe the law would be followed. It wasn't. They didn't require any further finding of harm in the Hicks case. That was it. That was the test. If that test was met, it had to be reversed. We also have numerous Bordier type cases where the law was not followed in one way or another. Peters v. Kiff where African Americans were excluded from jury. That case granted relief despite the fact, and this is why I bring this case up, at that time there was no right to a jury in the state courts. Duncan had not been decided. Just as there's no right to preemptory challenges right now, it didn't matter. The problem was the due process violation, and because there was a due process violation, the case had to be reversed. It was basically structural harm. In Graver's, Mississippi, the trial judge failed to follow the state law on Bordier, and it resulted in basically a Witherspoon type error. The question there, so it was a due process violation, was whether the composition of the jury panel as a whole could possibly have been affected by the trial court's error. That was it. We meet that standard here. So long story short, this was a due process violation. Now the state sites, rightfully so, Rivera, Ross v. Oklahoma, Martinez v. Salazar, these are all cases that hold there's no right to preemptory challenges. But I would point out for the court that each one of those cases specifically says what they're not. They specifically say they're not a case where the judge willfully did not follow the law, or repeatedly did not follow the law. Those cases are completely different from what we have here. Briefly, I would note that we have cause and prejudice based on ineffective assistance of appellate counsel. I believe the director agrees, the court below agreed, if this is a due process violation, then appellate counsel is ineffective. So it really comes down to the merits of this claim, the underlying claim about whether or not we can show cause and prejudice down, it's not Teague Bard, because the idea that a court should follow the law has been in existence for hundreds of years, maybe since the time of the Magna Carta. On the ineffective assistance of appellate counsel claim, there's a freestanding claim there. I would just point out, initially I believed that a certificate of appealability had been granted on that claim. Whenever we went back down on our remand, I did ask for clarification on that. Judge Atlas told us she denied COA on that claim, but as you're already aware, the motion for a new trial, because it's already been denied, acts as a request for COA from this court on that claim. And then I would also note on the record on appeal, the record that I have, that order, her orders, whenever we went back down, they're not in English. They're in, like, symbols. And so, the court should be aware, they were actually written out, of course, originally, and I'm sure the court has access to her actual orders. That claim, once again, would rise or fall on the basis of the due process argument. And we would ask the court, look at that and find there was a due process argument and either grant a COA on that claim or grant Issue 1, which is what I'm calling it, which is the due process claim related to the jury instructions. I'll move on to the, what the district court called serious claim of ineffective assistance of trial counsel. And it's kind of in a strange posture right now, because at this point, this claim, as it sits, has never been addressed on its merits by any court. Judge Atlas addressed it previously, but as this court noted, of course, that was when funding had been denied. It was pre-Ayestas and the claim now is much more robust than it was the first time around, now that we had proper funding to perform a mitigation investigation. So, I'm only going to briefly kind of highlight the facts, the underlying facts of the claim for the court, because quite frankly, we have more procedural type issues to deal with today. Well, one of the issues you have to deal with is that the district court denied a stay on Arrines for various reasons. And we directed the counsel to address our recent decision in Sandoval-Mendoza v. Lumpkin, which talks about when Arrines' stay is foreclosed. And I was hoping to get your response to that, because the decision does seem directly on point here. I agree with you. That decision is on point for a portion of our plainly meritorious argument. So, you're aware, of course, the three prongs of the Arrines' stay. This deals with whether or not this is a potentially meritorious claim. Well, I mean, that would be dispositive of the Arrines' claim if Sandoval-Mendoza settles it. So, why doesn't Sandoval-Mendoza settle the Arrines' issue as to prong two? It would be meritless. Because I've gone back to look at the briefing, just to make sure I'm correct about this issue. The only grounds that Sandoval-Mendoza raised for why he might be entitled to a subsequent habeas in Texas was this Martinez-Trevino ground. That was it. We've also separately alleged that under Texas Code of Criminal Procedure Article 1107, Section 5A3, I'll just call it Section 3, that we can meet that standard. That's a separate standard than this whole Graves case. Graves is interesting case because it had, that's the Texas case on point. Graves had actually raised a freestanding claim of ineffective habeas counsel, and that's the whole issue that various justices have suggested maybe we should revisit that over time. In this Sandoval-Mendoza case, apparently, the only hurdle that he said he could clear, the only way he thought he could raise a subsequent writ was if Graves was reconsidered. He didn't argue anything else. This court did hold that the opportunity to reconsider the Graves issue is not enough. I do think that it forecloses my argument on the Graves issue. Yeah, I agree with you. But it does not foreclose the argument on the Section 3 issue, which is different. Section 3 requires, but for a constitutional violation, no rational juror would have answered in the state's favor one or more of the special issues. Continues on a little bit. Section 3, though, how do you pronounce it? Rocha? Yes, sir. Am I being too nuanced to say the argument here turns on footnote 42 in ex parte blue and whether or not? So, once again, we do have a rather complicated issue here. But in a simple form, isn't it saying Judge Tipton said that his Wiggins claim would be meritless because it couldn't be brought under 5A3 if 5A3 has codified Sawyer's actual innocence test? That's how I saw the sort of equation play out. And that's the, is it Rocha or Rocha, Judge? It doesn't matter. That's the case I'm thinking of. Okay. I would first point out about Rocha. That was a question, I believe, whether or not Section, what I'll call Section 3, was an independent and adequate state law grounds, okay? And the main issue there was whether or not it, the A3 required merits review. I believe that was the argument in that case. I think the argument was it's not an independent and adequate state law grounds because we necessarily look to the merits in Texas. And that idea was shot down in that case. So, it is a little bit of a separate question. But if Sawyer is codified in Section 3, and I'm not trying to box you in a corner, then I don't think, I think Judge Tipton's right. You couldn't prevail. And therefore, you've got to argue that the CCA, when it's interpreting Texas law, didn't, is that fair? I agree with that. And so, I'm going to tell you why I believe Section 3 is more broad than Sawyer. Exactly. So, Section 3, you have to look at what issues are submitted to the jury. Because that's what Section 3 says. It doesn't say, it could have said, only the issues the state has the future dangerous issue. That's the way we do it in Texas. Some of us disagree, but, you know. So, the issues submitted to the jury here include both the future dangerousness issue and specifically the mitigation issue, 37071, you know, Code of Criminal Procedure. So, by its plain text, Section 3 is more broad than Sawyer and can include mitigation evidence. So, as applied to Mr. Tong's case . . . Right. I see where you're going, just with time, because I want you to get to the good cause first element. Okay. But, are you familiar with Ex parte Blue? I am. Do you know, are you familiar with footnote 42? I, for some reason, have footnote 40 and 41 written down. Okay. I read it again last night. What do you think the CCA has said is its construction of Section 3? I remember in that case, I think it's that case, them saying that it was an attempt to essentially codify Sawyer v. . . Right. But then in the footnote, they say, but we've got the special jury question, and I didn't see that they resolved it. Right. I believe that's an Atkins case, and they were struggling with how to get Atkins back before court, potentially, and I do think it's kind of all over the place. I don't think it's necessarily controlling here, and I can tell you that I'm not familiar in Texas, and I do practice Texas habeas work quite a bit, of a case specifically applying a Wiggins-type claim to Section 3. So, I do think that Blue is not controlling. I don't know that that footnote resolves this issue one way or another, and our argument is that the plain text of the statute is clearly more broad. If you're right, you still have to surmount the first element . . . Right. And just, if I'm correct, the good cause question . . . Yes, sir. You would win if you were in the Ninth Circuit . . . Right. But why do you win in this court if our pre-Martinez Trevino case law . . . Okay. . . . applying Coleman . . . Yes, sir. So, first, I'd point out that just to get over Section 3, we don't have to actually clear that bar in order to get the claims back down to the lower court. We just have to make a reasonable threshold showing that we might be able to get there. So, I would mention that. Okay, wait. Let me understand that. Right. For us to . . . well, for us to reverse his denial to stay, we would have to say that you've got good cause. And I guess my question is, how can we say that if Coleman is binding on us? That's my question. Got you. And I apologize. I was still answering your old question. Okay. So, here's where I'm going with that. I recognize that Hall v. Thaler and Williams v. Thaler exist. Okay. Neither one of them are binding on this court because they're both pre-Trevino cases. Trevino, they're both Texas cases. Trevino was the first time Martinez was applied to Texas. So, that clearly changes everything. Well, you say it clearly changes, but we've got to have something saying that it clearly changes, don't we? In other words, the Supreme Court didn't in Trevino say, this clearly abrogates Coleman. We don't have a statement. Oh. Right? We are still . . . Right. Aren't we still under published Fifth Circuit law? But push back. No, no. That's what I'm . . . You're with me. Push back. So, just so you know, first Hall v. Thaler, unpublished case. So, that . . . I know that. Putting that aside. Okay. Doesn't discuss Martinez and it's pre-Trevino. First off, let me point out a major factual difference as well. And the court hung its hat on this difference. This is Williams v. Thaler you're talking about? This is Hall v. Thaler. Okay. I'm not . . . It's unpublished. I'm not . . . Okay. Great. So, Williams v. Thaler, pre-Martinez, pre-Trevino. The merits of the claim had actually been reviewed. But because it's based on the statements in Coleman and it's pre-Martinez and Trevino, the court, I think in that case, also decided what was eventually decided in Martinez. The cause, not good cause under Rhines, but cause under cause and prejudice. And that was decided the other way of Martinez. So, to the extent that Martinez . . . Well, clearly that part of that case would . . . You know, the cause and prejudice part was overruled, clearly. Now . . . Ineffectiveness at the trial lawyer and the appellate lawyer. Right. Here we don't have yet. The whole point of the Wiggins inquiry would be to decide whether or not there was trial-level ineffectiveness. Right. So, it's not a parallel situation. And the Ninth Circuit's saying, well, it's equity one to the other. Right. That's your argument. Our argument, and we briefed this, I forget all the cases, but it seems that the good cause from Rhines is actually easier to meet, just in general, than cause from cause and prejudice. And the fact that . . . And let me point something else out here. Unlike Shin Ramirez, which is a statutory case, okay, the Rhines case is not based on a statute. It's based on equity. Same with Martinez-Trevino, both those cases. They're based on equity. So, our argument is, as an equitable matter, the Supreme Court has told us that ineffective assistance of trial counsel claims are the bedrock of all the trial rights. Without a good lawyer, I'm sorry, without an effective lawyer, almost nothing else matters. And for that reason, there's an equitable, under the cause and prejudice standard, way to get around a procedural default. But what would your limiting principle be then? Wouldn't that allow any litigant a second bite at state exhaustion? Anytime you've got ineffectiveness at the habeas stage, what's your limiting principle? Because this would . . . The way we would limit it here is we would limit it to exactly what Martinez-Trevino did. That's what we're asking for, because we have the same thing. We're not asking the court to decide anything else at all other than ineffective trial counsel that's the underlying claim. Which we don't know yet. I mean . . . It's never been . . . It's a serious claim, but it hasn't been decided. Never been addressed on the merits. Yes, that's correct. And I would point something to, to limit it, we would do the exact same limitations from Martinez-Trevino and try to apply them into the Rhine's analysis. That would be the limiting, the way to limit it. Any circuit that's done it other than the Ninth, and I don't mean to dominate. Any circuit that's done that? I went back after Shin Ramirez and went back again before this argument, and I've seen, we've cited them, and they've cited some. I don't remember if there was any other . . . There's district courts that have granted them. There's district courts that have denied them. Okay. But I don't know of any other circuits. That would be the direction we'd have to go to reverse. Correct. On that good cause issue. Right. There's a threshold one. We've got to reach that. You've got to reach good cause. All right. So essentially, that's what we're saying. We're saying Martinez's cause, I think, is even more onerous of a burden than good cause here. I would point out both Martinez and Trevino have underlying rationales and goals here, and it's that whenever you have ineffective assistance of your trial counsel, and I know you have the briefing on . . . It's not even as robust as it was before the district court about the Wiggins claim here, and we have made a very strong showing that state habeas counsel did absolutely no mitigation investigation. None. None. But the underpinnings of both those cases are this. A criminal defendant, capital case or not, but certainly in a capital case, should have one opportunity somewhere to raise a serious claim of ineffective assistance of trial counsel, and Mr. Tong's never had that. Mr. Coleman had it. Remember, in his case, he'd actually raised it at the state court level, but then he filed his notice of appeal late. So it's our argument that the exact same factors that controlled those cases control this case. Of course, I guess I'll . . . If the court would like me to, the third factor here, the intentional . . . No intentionally dilatory tactics. And, you know, the state has suggested numerous things. This has taken so long. They basically say this case has taken forever, right? Ten of these years, the case just sat in the state district court. That was not Mr. Tong's fault. Whenever it came up to the district court, the federal district court, he filed his briefings timely. He asked for a stay. He went back down. He came back up. You know, the case has been moving at all times. A large part of the stay related to the Brady claims that we then litigated for about four years before the district court. I know you've denied those claims. We still think they're fairly strong claims, but we respect the decision of the court. Then we get the remand, and I've even been blamed for not getting the proper remand somehow. Quite frankly, nothing here has been intentional. This has just been the way this case has gone. It's truly a unique case. Mr. Tong's background is truly unique. It's amazing the things this young man went through before he briefed . . . very brief foray into crime, although albeit very serious crimes. And all we're asking the court to do is find that this claim deserves encouragement to go forward, and that we meet the RINES standard so that we can go down to Texas and give them the shot to rule on this claim so that one court, at least, will consider the merits of the claim. I'm out of time for this portion. Thank you. Yes, you saved some time for rebuttal. Thank you, Mr. Landers. Mr. Mazzara? May it please the Court. There are two primary issues, the RINES stay and voir dire. The easiest way to decide the RINES issue is under RINES' second requirement, whether or not a stay would be plainly meritless. Given Article 11071 in Ex Parte Graves, a stay here would be plainly meritless. I think if it's limited to that, you're right. Mr. Landers says no. Sandoval Mendoza doesn't address the alternate ground under . . . I'm going to get the section wrong. Is it A-1 or A-3? I believe it's Section 5C-3, although he could correct me. The one that we were discussing. What is your response to that? So my response to Mr. Landers' argument regarding actual innocence at the death penalty is simply that under AROCA, mitigation does not typically go to innocence, particularly insufficient mitigation or inadequate mitigation does not go to innocence. And here, it especially doesn't because the mitigation that they say that they have discovered, for example, these claims about him having been sexually assaulted as a child and some of the troubles that he had coming from Vietnam to here, none of that goes to the special issues such as future dangerousness. And so because the mitigation does not actually address future dangerousness and the only new fact that he was sexually assaulted, that affects nothing with respect either to the covious amount of evidence of future dangerousness that the state put on, which included robbing a bank, which included Tongs invading a home, burglarizing it, shooting the father of a family three times. I don't understand that the argument was this goes to a special jury question as to future dangerousness. The argument is that it goes to a special jury question as to mitigation. Right. Yes, Your Honor. That's the one that Judge Tipton said there's a serious claim here. Yes, Your Honor. So with regard to mitigation, again, when you look at the mitigation case that was put on in the trial court, this additional evidence would not, I think, in the balance outweigh the aggravating evidence. Because you think compared to 2016, but Judge Tipton looked at the 2016, he agreed with you. Then he sees the two cousin affidavits and now he calls it serious. So how would we just say, oh, Judge Tipton's wrong. It's meritless when we go back and look ourselves. Well, but you had to make a legal argument. Yes, Your Honor. I think that you can also look to the affidavits by the trial counsel themselves about their investigations into mitigation evidence. You can find their affidavits at ROA 10672. Sorry, 10672. And they talk in there about why they did not pursue further mitigation investigations. When they hired a mitigation expert, Tong admitted to additional crimes, violent crimes including murder. You're saying that the denial of a stay, the best argument to affirm it is it's meritless and it's meritless and now you're describing facts that presumably Judge Tipton knew before he said it's a serious claim. Is your argument a factual one or are you developing any legal argument that it's meritless as a matter of law? Well, I think it's also meritless just simply as a matter of law because all of these facts were known and available to the petitioner at the time that he brought his first state habeas petition and he did not include them in the state record. And under 1107, Article 11071 and under Ex Parte Graves, the Texas court will not hear a subsequent petition. I guess that's what I was getting at. The Sandoval-Mendoza dealt with 5A1. I'm getting my sections right now. And then the argument is, well, no, there's an argument being made here under 5A3 with respect to Wiggins. And so the question is, seems to me, is has the Texas Court of Criminal Appeals ever allowed a 5A3 claim based on Wiggins? Not that I'm aware of, Your Honor. I couldn't find it. I could find maybe alluding to the possibility of such a thing hypothetically. But I'm just trying to get it. Is there any real possibility of going back to the Texas state courts and getting over the successive writ problem through 5A3 in this Wiggins claim? And I'm having trouble finding any Texas law that would allow that. No, I don't believe that there would be any merit to doing that. Again, under . . . okay, I don't know of any case myself that the UCCA has allowed that to happen. Do you know the Ex Parte Blue case? Yes, I'm familiar with it, Your Honor. No, I thought it was footnote 42. Maybe it's footnote 41. I thought right there the Court of Criminal Appeals specifically addressed this issue and said we are not deciding that Sawyer actual innocence is codified as to section A3 precisely because the law allows for special jury questions. I thought they specifically left it open. I don't have the case in front of me right now, Your Honor. Do you have any recollection? Not specifically of footnote 41, but . . . I think that if you look at it, you'll see that they left it open, but it's a hypothetical possibility. And in Sandoval-Mendoza, we said the opportunity to reconsider state court precedent is not enough to grant a rein stay. I mean, it sounds like maybe counsel opposite will have a different view of it, but it sounds like this has never been allowed. It's a theoretical possibility, but there's no Texas case allowing it. Yes, Your Honor. I think that Dicta and Ex Parte Blue also, and believe in . . . my friend on the other side is brief. He also brings up Ex Parte Ruiz where there's some Dicta about considering sometime in the graves that none of that is enough to hurdle Reins' second requirement that a stay not be plainly meritless or Sandoval-Mendoza, which says that the fact that a state court might reconsider prior precedent, that the fact that they might do that is not justification enough to hurdle the laws that currently exist. I heard him. He agrees Sandoval-Mendoza is conclusivist to A1. He's still persisting with A3. Are you familiar with our case from October of this year, our case, Murphy v. Nassar? I am not, Your Honor. We've been debating this issue. It's a very difficult issue whether or not A3 codifies actual innocence as a requirement. It's an eerie guess about state law. You aren't here as I hear. You're not asserting to us there's some answer. You don't have authority saying that's answered or you do? Your Honor, we believe that Sandoval-Mendoza forecloses the issue as to A3. That there might be a change or development in law, that going back to state courts, expecting them to review these issues, that Sandoval-Mendoza forecloses as a justification for Reins. I would have thought you'd focused on the first element of Reins. And I don't mean to force you to go there, but you heard my inquiry. It seems to me we aren't in the Ninth Circuit. And are you familiar with that whole? It is a little intricate puzzle, but I'm guessing you're familiar with it. What would you say in answer to his comments about Martinez-Trevino have changed cases like Williams v. Thaler? The Ninth Circuit's right. This is an equity. We should apply the same to a good cause requirement. Well, our response to that, Your Honor, is that we don't believe that they were speaking entirely on point to whether or not ineffective assistance of appellate counsel in this context would justify cause in the Reins context. However, I do think that the second requirement, again, of Reins is probably . . . You're really resting on the second requirement. Well, on the first prong, don't we have cases that say that ineffective assistance of habeas counsel isn't a good cause? Those are admittedly pre-Martinez, but why . . . Yes, I believe Hall v. Thaler. We've got at least one published opinion. Don't we have to follow that? Yes, under the rule of orderliness. Why are you jumping back to second rule? That's a strong argument. Well, I mean, I think that both arguments . . . I believe the State has made both arguments and is holding to both arguments, Your Honor. Do you want to critique the Ninth Circuit Blake decision? No, Your Honor. We're in a . . . I'm not familiar with the Ninth Circuit arguments, and I mean . . . The Ninth Circuit directly addressed this and states that Martinez-Trofino has changed the law and should apply in this exact context. Have you read the Blake decision? Uh, Your Honor, preparing for this case, I read the Fifth Circuit opinions on point with regard to the issues that were raised by the opposing party. I mean, it seems a stretch to me that Martinez directly changed those cases because it's in a different context, and we usually require an unequivocal overruling by the Supreme Court in order not to have to follow our own precedent. Yes, Your Honor, just . . . I mean, this Court has recently pointed out such a need in the case in Mullis, for instance. I was about to bring up Mullis. We have two members of the Mullis panel here, and that seemed to strictly follow our own precedent, even though, arguably, Shen might have caused it into some doubt, and yet, we have to follow our own precedent. Yes, Your Honor. So, regarding the Vordaer claims, the easiest way to resolve the Vordaer claims, or at least some of them, is under this Court's precedent in Roberts v. Thaler. In Roberts, this Court held that Texas's inadequate briefing rule is an independent and adequate state ground that can preclude Federal review of certain Federal habeas claims. The CCA disposed of Tongs Vordaer claim under that inadequate briefing rule, thus precluding review of that here, unless they, of course, show cause and prejudice, which they have not. I am going to talk a little bit about, more about the Vordaer claim first. So, the Court should affirm the District Court's denial of Tongs Vordaer claim and deny any outstanding request for a CAA, COA on, for example, his IAAC claim. Tongs due process Vordaer claim is procedurally defaulted, again, for having been inadequately briefed. As Roberts v. Thaler held, Texas's inadequate briefing rule has been regularly followed and applied to the majority of similar claims. The consequence of the CCA's disposing of Tongs Vordaer claim under the inadequate briefing rule is that, according to Roberts, the State Courts denial of that relief on an independent and adequate state ground procedurally bars review. And under the rule of oralliness, Roberts bars consideration of Tongs due process Vordaer claim. Now, regarding some of the other issues that he raises, for example, the structural error claim that he raises in his briefing, that claim has not been exhausted. It wasn't raised in the State habeas or on direct appeal. And he would have to overcome, you know, show cause and prejudice for why that hasn't been overcome, because otherwise it's barred from, by, for consideration by this Court. And additionally, and more importantly, under one of the, kind of the thrust of the Vordaer claim is that there was, whether it's structural or there's a due process error, all these errors have to deal with these parentory challenges. Having gotten 15, having been told he was going to get unlimited parentory challenges, getting his 15, having eight more, but then that being pulled back by the judge. You know, the other side claims that this is a, you know, this is like a, there's a constitutional issue here. But Rivera v. Illinois, I think, is sufficiently on point. Rivera v. Illinois talks about how parentory challenges and things dealing with parentory challenges are state law issues. They are not of a constitutional dimension. And therefore, if the, these claims not only are they procedurally barred, but if the Court were to decide to disagree, additionally, I mean, there's not constitutional issues and they can't be considered under ADPON. Now, I also want to touch on Tong's request for a COA on his ineffective assistance of appellate counsel claim, revising from inadequate briefing. So, first of all, Tong breached that claim on the merits in the state habeas proceedings, and it was rejected as having caused no prejudice. You can find that at ROA 11015. And so, it falls within the epideference under 2254D. And so, unless that decision, again, was clearly wrong, it was so lack, unless it was so lacking beyond any fair-minded disagreement, as Richter would put it, then the, then that issue is resolved in the state's favor. Additionally, Tong cannot even approach establishing any sort of prejudice anyway from his IAC claim or the due process claim or any of these other claims. He would have to show that the trial was fundamentally unfair, which required, which required him to show that there was a probability, a reasonable probability that the verdict might have been different had the trial been properly conducted. He cannot do this because he fails to show how he would have otherwise conducted the vore dire. He fails to show even one juror affected, any one juror that was affected by the decisions of the trial court who would have been, who was a biased juror or was unqualified to serve. And in fact, he concedes that the jurors were unbiased and qualified. And because there's, again, there's no constitutional right to preemptory challenges, you know, even looking at the merits of this, he would fail. If there, if there are no further questions, thank you, Your Honors. The state requests that this Court affirm the district court and deny Tong any additional COAs, certificates of appealability. Thank you, Mr. Mazzara. Mr. Landers for rebuttal. Although I like the process issue, I'm going to jump back into Rines for the Court. We've got other issues, the constitutional issue, but I'm going to stick to Rines for a few more seconds here. I would point out first what our standard is, which is not plainly meritless or it's entirely clear that the claim would be defaulted. Entirely clear. That comes from Wilder v. Cockerell. I guess it's the same thing. It's not plainly meritless. And I forgot last time to discuss another, another interesting issue. The parties and it appears the Court all, I'm thinking, agree this is an unexhausted claim, this Wiggins claim, because it's clearly been fundamentally altered by facts. The, at the state level, the prior attorney didn't have any facts whatsoever in the claim. So, following this Court's precedent, Lewis v. Quarterman, Sells v. Stevens, it's unexhausted for Fifth Circuit under our precedent here. The respondent has raised an interesting question, which is, is it even unexhausted under Texas law? I have never seen a case like that discussing, you know, this parallel here where there's no facts and you present it again with facts, whether or not it's . . . You mean no mitigating facts? There, there was . . . So the Wiggins claim . . . Mitigating evidence. So . . . There is.  And there is, in the state record, in the federal record . . . Additional affidavits about sex abuse. So . . . That's not in the state record, Judge. No, exactly. It's in the, it's, well, the, what you want to add to the, to the record. Right. The affidavits from the cousins about sex abuse. So what's interesting about this case is, there was a Wiggins claim raised in a second habeas. It's a boilerplate claim. And at all points, the, the district court, the respondent and I have all considered this current Wiggins claim to be unexhausted because of the rule that if you add evidence, it fundamentally alters the claim. In their reply brief, the respondent argued, well, guess what? It's already been exhausted in state court. It's the first time it's ever been argued. Once again, I'm not aware of Texas cases even discussing this type of issue where maybe you have a boilerplate claim and it was a subsequent habeas and then you raise it with facts. But it gives us another possible reason that the CCA could allow Texas to review the claim. Well, it seems to me that in the Sandoval, although it doesn't directly address A3, is, stands strongly for the proposition that an argument that Texas law may develop in the future isn't enough to get through Rhines. I see it differently because Sandoval involved an issue that the CCA in Graves has already said we're not doing. We're not going to do it. Under 5A3, we don't have that issue. So it's, it's different saying, well, we don't know how they're going to apply their law, which is what I'm talking about. It's different than saying they already said we're not going to apply it the way the petitioner wants it. That's a different question. And there's yet, another issue, and I'll, I'll cite you to this case. It's in the brief. No, I don't have the case. It's the Hood case. It's cited in my reply briefing. It's a capital case where the constitutional claim had been raised previously, but it was inadequately briefed in a state habeas. And then after some intervening case law changes in a sub, another subsequent habeas, the court did something which the CCA does do. This has never been overturned. They do it. They reopened the old habeas on their own motion. Now, I've done this before. You actually file a motion asking them to do this. They did it in a non-capital case, Musa Zayda. They did it in this Hood case. And they've, and in Hood, they discuss all these other cases that they've done it in. Are you going to save any time just to mention the rule of orderliness on the first element? I appreciate all this. Well, the rule of orderliness would have to do with Hall v. Thaler and Williams v. Thaler, right? Yes, publish them. Wouldn't you have to be able to convince us that Martinez Trevino fundamentally and clearly altered Coleman? Okay. If you'll go back and look at the court's opinion in Williams, and I'm doing this from memory. Well, I believe it's all cause and prejudice, cause and prejudice. Coleman said you don't have this right. Yes. And I believe that the Rines analysis was simple, hey, we just discussed this stuff. It was all based on Coleman. It was all. The Supreme Court didn't abrogate Coleman in Martinez Trevino. It made an exception to Coleman. So if that case was based on Coleman, we now have the exception. I'm saying we're using the exact same exception here. It is, but I guess who's the one who has to say it? But I've used up your time. I want you all to say it. Thank you. We pray for relief here and to reverse the lower court's decision. Thank you. Thank you, counsel. Thank you, Mr. Landers. And of course, your court appointed, we wish to thank you for your willingness to take the appointment and for your good work on behalf of your client. I hope you'll be available for other appointments. Your case is under submission and the court is in recess.